FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 FEB 21 AM 8:42

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

RODERICK MCKISSICK,           )
                              )
          Plaintiff,          )
                              )
     v.                       )          CV 312-065
                              )
BRIAN OWENS, Commissioner; DAVID  )
FRAZIER, Warden; DAVID SPIRES,    )
Captain; DIANNE DEES, Deputy Warden;  )
FNU WHITE, COII; FNU COULEY, COII;  )
RODNEY MCCLOUD, Unit Manager;     )
SAMUEL SANDERS,[1] Deputy Warden;  )
ANNETTA TOBY, Deputy Warden; and  )
FNU DAVIS, COII,                  )
                              )
          Defendants.         )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, who is currently incarcerated at Macon State Prison in Oglethorpe, Georgia,

brought the above-captioned case pursuant to 42 U.S.C. § 1983.[2] Because he is proceeding

---

[1] The Clerk is **DIRECTED** to modify the spelling of Defendant Sanders's last name to reflect the caption, which is consistent with Plaintiff's amended complaint. (See doc. no. 20, pp. 1, 4.)

[2] Although he is currently incarcerated at Macon State Prison, Plaintiff was incarcerated at Telfair State Prison ("TSP") in Helena, Georgia at the time he filed his complaint and amended complaint, and the events described in those documents allegedly took place at TSP. (See generally doc. nos. 1, 20.)

*in forma pauperis* ("IFP"), the Court screened his original complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. In a prior Report and Recommendation ("R&R"), the Court found that Plaintiff's complaint failed to state a claim upon which relief could be granted and recommended that the complaint be dismissed. (Doc. no. 16.) On November 26, 2012, Plaintiff filed lengthy objections to the R&R, in which he provided a considerable amount of new information concerning, in particular, his claim that he was improperly confined to the prison showers for a five-day period of time. (See generally doc. no. 18.) Based on the provision of that new information, as well Plaintiff's improperly filed October 29, 2012 "Declaration" – in actuality, a series of witness statements – the Court found that Plaintiff should be given an opportunity to amend his complaint in order to include all of his claims and allegations within a single filing. (See doc. no. 19.) Accordingly, the Court directed Plaintiff to submit an amended complaint, should he choose to do so, within fourteen days of the date of that Order. (Id. at 2.)

Plaintiff has now filed his amended complaint.[3] Because the amended complaint supersedes the original complaint, in a simultaneously issued Order, the Court has vacated

---

[3]Notably, despite the Court's clear instructions not to incorporate exhibits by reference as a means of providing a factual basis for the complaint (doc. no. 19, p. 3), Plaintiff's amended complaint includes 150 attached exhibits, the majority of which are "witness statements" and rejected grievances. (See doc. nos. 20-1, 20-2, 20-3.) Moreover, the substance of Plaintiff's amended complaint, which is handwritten despite the Court's earlier provision of a standard complaint form (see doc. no. 19, p. 3, n. 1), consists almost entirely of Plaintiff's descriptions of the contents of each exhibit in varying levels of detail. (See doc. no. 20, pp. 1-35.)

its prior R&R screening the original complaint. Thus, Plaintiff's amended complaint must be screened in accordance with the IFP statute. Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

## I.    SCREENING OF COMPLAINT

### A.    Background

Plaintiff names the same Defendants in his amended complaint as he did in his original complaint, as follows:  (1) Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDOC"); (2) Warden David Frazier; (3) Captain David Spires; (4) Deputy Warden Dianne Dees; (5) Officer White; (6) Officer Couley; (7) Officer Davis; (8) Unit Manager Rodney McCloud; (9) Deputy Warden Samuel Sanders; and (10) Deputy Warden Annetta Toby.

In his amended complaint, as with his original complaint, Plaintiff sets forth what are delineated as eight separate claims that concern a variety of issues. A number of those claims, while asserted under distinct sections within the amended complaint, concern the general conditions of Plaintiff's confinement at TSP. Plaintiff first alleges that, on February 10, 2012, he refused to join the general prison population, and that Defendant Frazier, the Warden of TSP, subsequently asked him his reason for doing so. (Doc. no. 20, p. 4.) Plaintiff alleges that he told Defendant Frazier that he had enemies at TSP and that he was

3

not trying to cause problems. (Id.) Plaintiff alleges that Defendant Frazier replied with a series of crude comments apparently intended to demonstrate his authority over Plaintiff and the other prisoners, and that he then ordered Defendants Toby, Sanders, McCloud, Jefferson, and Spires to confine him and a number of other prisoners to the prison showers. (Id. at 5.) Plaintiff alleges that Defendants Spires and McCloud then complied with Defendant Frazier's orders and escorted Plaintiff to the showers, where he was confined for a total of five days. (Id. at 6.) Plaintiff alleges that the showers were unsanitary and did not have toilets or sinks, and that he and the other prisoners were thus forced to "eat, sleep, urinate, and defecate" therein and to live in "the proximity of other humans' waste." (Id. at 7.)

Notably, Plaintiff has provided a copy of an "Administrative Segregation Assignment Memo" documenting his relegation to the "F-1 Shower" for refusing to join population, which is signed by Defendant McCloud. (Doc. no. 20-1, p. 9.) Additionally, Plaintiff has provided a series of grievances in which he protests his confinement to the showers. (Id. at 1-25.) In the responses to those grievances, various prison officials explain that Plaintiff was placed in the showers pending bed availability due to his refusing his bed assignment and segregation being filled, that cleaning supplies and chemicals are issued every Tuesday and Thursday, and that it is Plaintiff's duty to clean his living quarters. (Id. at 1, 4.) Plaintiff has also provided a series of "witness statements" that are generally addressed to Defendants Frazier, Sanders, Toby, Dees, and McCloud, wherein he again protests his confinement to the showers. (Id. at 10-19.)

4

Plaintiff also asserts a number of other claims related to the general conditions of his confinement at TSP. First, Plaintiff alleges that prison officials at TSP improperly handle "meals, trays, spoons and cups." (Doc. no. 20, p. 21.) While Plaintiff does not go into further detail concerning that claim within the body of his amended complaint, his attached grievances make clear that he essentially alleges that prison officials often fail to use gloves when serving food. (See, e.g., doc. no. 20-2, p. 35.) Next, Plaintiff alleges that he was denied "sanitary conditions of confinement" due to the failure of the prison officials to "frequently provide cleaning chemicals and utensils to sanitize and clean cells." (Doc. no. 20, p. 24.) Finally, Plaintiff alleges that his cell – along with the cells at TSP generally – was "inhumane and unsafe" because it was insufficiently ventilated due to a metal plate over the cell window that "only opens approximately three and a half inches." (Id. at 26.) Plaintiff alleges that the insufficient ventilation, in conjunction with the use of a "riot gun which produces harsh and powerful vapors" and "harsh temperatures" in the summer, generally subjected him to "excruciating suffering." (Id. at 26-28.)

Plaintiff next alleges that he has been deprived of adequate legal and law library research material. (Id. at 12.) Specifically, Plaintiff alleges that his due process rights have been violated due to his restricted access to legal mail, postage, and legal research materials. (Id. at 12-15.) Plaintiff further alleges that he has been denied his due process rights due to the "defective and futile grievance system." (Id. at 17.) In support of that claim, Plaintiff essentially points to the multitude of grievances that he has filed that have been "wrongfully"

rejected, many of which are attached to his amended complaint. (Id. at 18-21.)

Next, Plaintiff alleges that his "personal health care products" were "wrongfully confiscated" by officials at TSP. (Id. at 29-30.) In apparent support of that claim, Plaintiff has attached a memorandum from Defendant Frazier to the TSP staff explaining that, pursuant to prison policy, certain listed property items are "prohibited in the F-building" and must be confiscated from inmates and stored until that inmate's release. (Doc. no. 20-3, p. 15.)

Finally, Plaintiff alleges violations of his right to the free exercise of his religion, based on his assertion that kitchen and prison officials "wrongfully [used] the same trays etc. to serve both restricted vegan (Kosher meals) and regular diet meals in complete violation of [prison policy] and [his] religious dietary laws and practices." (Doc. no. 20, p. 16.) Plaintiff does not elaborate any further as to that claim, but instead references a number of attached grievances that echo the same allegation. (Doc. no. 20-1, pp. 51-58.) In the responses to those grievances, which have also been provided, various prison officials explain that, contrary to Plaintiff's allegations, "restricted vegan/vegan meals are sent to segregation on separate carts," "vegan trays are only washed in the vegan kitchen," "disposable utensils are provided with the segregation meals," and "regular diet trays and restricted vegan/vegan trays are never mixed." (Id. at 51-53.)

Notably, as to each of his claims, Plaintiff repeatedly asserts that he was the victim of conspiracy amongst prison officials that was intended to generally deprive him of his

constitutional rights and otherwise retaliate against him. For example, as to his claim concerning vegan meals, Plaintiff asserts that Shevondah Fields, who is the Manager of Inmate Affairs and who has not been named as a defendant, "mendaciously conspire[d] with corrupt prison officials to conceal their constitutional violations of [his] religious dietary laws," and that Defendant Frazier "failed to correct" the situation "as a malicious retaliatory tactic in a campaign of harassment." (Doc. no. 20, p. 16.) Such allegations constitute a common refrain that is repeated ad nauseum throughout Plaintiff's amended complaint.

In his request for relief, Plaintiff asks that he be awarded compensatory damages in the amount of three million dollars. (Id. at 35.) The Court also notes that Plaintiff remarks once in the body of his lengthy amended complaint that he intends to sue each Defendant in his or her official capacity, but that he does not repeat that assertion in his request for relief or elsewhere. (Id. at 1.)

**B.    Discussion**

As an initial matter, the Court notes that official capacity claims against prison officials for money damages are barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159, 169 (1985). The Supreme Court has explained the "practical and doctrinal differences between personal and official capacity actions" and has noted in particular that official-capacity suits demonstrate a general intent to bring claims against the entity of which an officer is an agent rather than the officer himself. Id. at 165-66. In other words, an official-capacity suit "is *not* a suit against the official personally, for the real party in interest

7

is the entity." Id. at 166. Here, given a liberal construction of the claims that Plaintiff asserts

in his amended complaint, it is clear that, despite Plaintiff's isolated and somewhat offhand

statement that he intends to sue each Defendant in his or her official capacity (doc. no. 20,

p. 1), the substance of the amended complaint and the claims asserted therein indicates that

those claims are, in fact, individual capacity claims. Not only does the amended complaint

contain no explicit statement of intent to bring suit against any entity in particular, Plaintiff,

in describing his various claims against each named Defendant therein, repeatedly

demonstrates his intention to hold those Defendants individually responsible for their alleged

actions. (See, e.g., id. at 5-6.) Accordingly, and in the interest of judicial economy, the

Court will not dismiss Plaintiff's complaint on Eleventh Amendment grounds, but instead

finds that Plaintiff's claims are properly construed as claims asserted against each Defendant

in their individual capacities.

### 1. No Eighth Amendment Claim Based on General Conditions of Confinement

Liberally construing Plaintiff's allegations in his favor and granting him the benefit

of all reasonable inferences to be derived from the facts alleged, the Court finds that, except

for his claim concerning his alleged confinement to the prison showers as to certain

Defendants, Plaintiff's allegations regarding the general conditions of his confinement fail

to state a claim for the violation of his Eighth Amendment right to be free from cruel and

unusual punishment.[4]  As noted above, Plaintiff's other claims concerning the general

conditions of his confinement include the allegedly unsanitary handling of food and trays in

the prison kitchen, allegedly inadequate availability of chemical and cleaning utensils for the

purpose of cell sanitization, and the allegedly insufficient oxygen flow to and from his cell

resulting from metal window coverings.  (Id. at 21-29.)

However, limited periods of incarceration in unsanitary conditions are generally

insufficient to evidence an Eighth Amendment violation.  See, e.g., Harris v. Fleming, 839

F.2d 1232, 1235 (7th Cir. 1988) (depriving prisoner of toilet paper, soap, toothpaste and

toothbrush while keeping him in filthy, roach-infested cell for a period of several days was

not a constitutional violation); see also Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir.

2004) (holding that there was no valid conditions of confinement claim under the Eighth

Amendment where prisoners complained of excessive temperatures in their cells during the

summer due to inadequate ventilation).  Plaintiff's allegations concerning unsanitary kitchen

procedures, his lack of consistent access to cleaning materials, and the supposedly restricted

flow of oxygen are entirely conclusory, and, even if true, do not constitute sufficient claims

under the Eighth Amendment.  Simply put, Plaintiff's allegations fail to demonstrate any

deprivation of "the minimal civilized measure of life's necessities."  See Hamm v. DeKalb

---

[4]In a simultaneously issued Order, the Court has directed that service of process be
effected on Defendants Frazier, Spires, and McCloud based on Plaintiff's allegation that he
was confined to the prison showers for five days.

County, 774 F.2d 1567, 1575 (11th Cir. 1985) (noting that the fact that the plaintiff had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation). In other words, Plaintiff's allegations do not indicate the sort of "extreme" deprivation that a valid conditions of confinement claim demands. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (noting that conditions of confinement claims must demonstrate "extreme" deprivations, and that such claims are "responsive to 'contemporary standards of decency'"). As a result, Plaintiff fails to state a viable claim against any Defendant based on his allegations concerning prison officials' failure to wear gloves when preparing and serving food, inadequate availability of cleaning supplies, and insufficient cell ventilation.[5]

As to Plaintiff's attempt to assert his claim concerning his alleged confinement to the prison showers against Defendants Dees, Sanders, and Toby in addition to the Defendants on whom the Court has allowed service of process to be effected, that attempt is unavailing. In short, Plaintiff has not demonstrated any causal connection between the actions of those Defendants and the alleged constitutional deprivation. However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). In fact,

---

[5]In any event, Plaintiff fails to connect those conditions-of-confinement claims to any named Defendant and, as explained infra Part I.B.6, Plaintiff may not hold Defendants Frazier or Owens responsible for the acts of their employees pursuant to the doctrine of respondeat superior.

Plaintiff's only allegation against Defendants Dees, Sanders, and Toby concerning the shower claim is simply that they were present when Defendant Frazier instructed that he be confined to the showers. (Doc. no. 20, p. 4.) Notably, Plaintiff does not allege any further involvement with his confinement to the showers on the parts of those Defendants. To the extent that Plaintiff attempts to bring the claim against those Defendants based on Plaintiff having submitting "witness statements" addressed to those Defendants in which he describes his confinement (doc. no. 20-1, pp. 12-17), the Court notes that there is no indication that Defendants Dees, Sanders, and Toby were even aware that those witness statements were submitted. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety").

### 2. No Due Process Claim for Mishandling of Grievances

Plaintiff's allegation that the grievance system is defective and futile, which appears to be solely directed at Defendant Dees, if anyone, is likewise insufficient to state a cognizable § 1983 claim. (Doc. no. 20, pp. 17-21.) Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam). Therefore, Plaintiff's allegations regarding Defendant Dees' purported interference with his access to the grievance procedure fail to state a § 1983 claim upon which relief may be granted. See

id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

### 3. No § 1983 Claim Based on Access to Legal Materials

Next, Plaintiff alleges that he was deprived of sufficient access to legal materials and the law library in various ways. (Doc. no. 20, pp. 12-15.) To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement"). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [ ] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an

12

allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Here, Plaintiff alleges that Defendant Dees and Toby joined in a conspiracy with Shevondah Fields, who is not named as a defendant in this lawsuit, in order to generally conspire against him and "[make] fabricated allegations" that somehow prevented him from accessing the law library.[6] (Doc. no. 20, pp. 12-13.) Plaintiff also protests the limited amount of postage that was available to him as well as the amount of time that he was afforded to use the law library. (Id. at 15; doc. no. 20-1, p. 37.) Those allegations, however, are plainly inadequate to state a viable access to the courts claim, as Plaintiff fails to specify any actual injury to a nonfrivolous legal action (including the instant case) caused by Defendants. Therefore, Plaintiff fails to state a viable claim for denial of his right to access to the courts.

### 4.      No § 1983 Claim Based on Free Exercise of Religion

Next, Plaintiff's allegation that the "kitchen and prison officials wrongfully [used] the same trays" to serve both restricted vegan meals and regular meals fails to state a viable

---

[6]Notably, as explained in more detail infra Part I.B.8, an attempted conspiracy claim supported only by conclusory, vague, and general allegations, like Plaintiff's here, is subject to dismissal. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*).

claim under § 1983. (Doc. no. 20, p. 16.) First, Plaintiff's bare allegation that prison officials improperly used the same trays for both vegan and non-vegan meals is entirely unsubstantiated and does not clearly identify any particular Defendant who he claims is responsible for the alleged violation.[7] (Id.) In fact, Plaintiff's actual claim concerning the propriety of his meals appears to mostly consist of – like the majority of the claims asserted in his amended complaint – charges of conspiracy against the officials to whom he directed his grievances, and who, on some occasions, received and responded to those grievances. (Id. at 16-17.) Notably, Plaintiff does not specifically allege that he is Jewish, nor that he asked the kitchen staff for Kosher meals on the proper type of tray and was refused. Moreover, the numerous responses to his grievances that Plaintiff has provided demonstrate that, contrary to Plaintiff's markedly conclusory assertions, restricted vegan trays and regular diet trays are not, in fact, mixed, and Plaintiff has not pointed to any factor or occurrence whatsoever that might indicate otherwise. (Doc. no. 20-1, pp. 51-53.)

## 5.    No § 1983 Claim for Deprivation of Property

Next, Plaintiff's allegation that his personal health care products were wrongfully confiscated from him pursuant to a prison policy enacted by Defendant Owens, the

---

[7]Plaintiff does parenthetically insert the names of Defendants Davis, White, and Couley into his description of one attached exhibit and thereby appears to imply that they are responsible for the improper usage of the trays and utensils (doc. no. 20, p. 16), but he does not elaborate any further on their supposed involvement. However, even if Plaintiff *had more directly linked those Defendants to the alleged violation, as explained herein,* Plaintiff has failed to state a viable claim related to the kitchen trays and utensils under § 1983.

Commissioner, and Defendant Frazier, also fails to state a viable § 1983 claim. (Doc. no. 20, pp. 29-32; doc. no. 20-3, p. 15.) The Eleventh Circuit Court of Appeals has explained that the State's seizure and retention of an individual's property does not give rise to liability under § 1983 "if a meaningful postdeprivation remedy for the loss is available." Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)). For example, where state law provides an adequate postdeprivation remedy for the loss of property, a § 1983 due process claim will not lie. Id. (holding that existence of Georgia state law claim for conversion of property precluded § 1983 due process claim against state officers for unlawfully seizing and retaining plaintiff's property); see also Morefield v. Smith, 404 F. App'x 443, 445 (11th Cir. 2010) (per curiam) (rejecting § 1983 due process claim against prison officials for seizure of plaintiff's property where plaintiff "had an adequate post-deprivation remedy under state law because he could pursue a tort action for conversion of his personal property").

Here, Plaintiff has failed to state a § 1983 claim for violation of his due process rights because Georgia law provides an adequate postdeprivation remedy for the loss of his property. As noted by the Eleventh Circuit Court of Appeals in Lindsey, O.C.G.A. § 51-10-1 provides a postdeprivation remedy in the form of a statutory state law conversion action. 936 F.2d at 561. Moreover, this state law authorizes claims against state officials for wrongfully depriving an individual of personal property. Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (noting that O.C.G.A. § 51-10-1 constitutes "an adequate postdeprivation remedy

when a plaintiff claims that the state has retained his property without due process of law"). Because Georgia law provides Plaintiff with an adequate postdeprivation remedy, and because it is clear that Plaintiff's claim is essentially that he simply disagrees with the prison-wide policy prohibiting the possession of certain items by inmates, Plaintiff's allegation of wrongful seizure and retention of his personal property fails to state a viable § 1983 claim.[8]

### 6. No Supervisory Liability Claim Against Defendants Frazier and Owens

Next, as to Plaintiff's only allegation against Defendant Owens – that Plaintiff's possessions were seized pursuant to Defendants Owens' policy – and as to all of his allegations against Warden Frazier concerning actions that allegedly took place under Warden Frazier's authority, Plaintiff fails to state a viable § 1983 claim based on supervisory liability. Although, as noted above, Plaintiff does mention Defendant Owens in connection to his claim concerning the confiscation of his property, and mentions Defendant Frazier in connection to a number of his claims, he does so almost exclusively in the context of asserting that, by virtue of their supervisory positions, they are responsible for the acts of their employees.[9]  (See generally doc. no. 20.)

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their

---

[8]Additionally, as explained below, Plaintiff may not hold Defendants Frazier and Owens responsible for the actions of his employees.

[9]To the extent that Plaintiff intends to assert that Defendant Owens is in fact directly liable for his confiscation of property claim, the Court has already explained that such a claim is simply not viable under § 1983.

subordinates on the basis of *respondeat superior* or vicarious liability." Hartley, 193 F.3d

at 1269 (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc.

Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff

must demonstrate that either (1) the supervisor actually participated in the alleged

constitutional violation, or (2) there is a causal connection between the actions of the

supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown

v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, with the exception of his claim concerning Defendant Frazier's order

that he be confined to the showers, Plaintiff does not allege that Defendants Frazier and

Owens actually participated in any purported constitutional violation. Similarly, Plaintiff

fails to allege a "causal connection" between those Defendants and the asserted constitutional

violations. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring

an affirmative causal connection between a defendant and an alleged constitutional

violation). The "causal connection" can be established "when a history of widespread

abuse[10] puts the responsible supervisor [or employer] on notice of the need to correct the

alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's

[or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to

---

[10]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

17

constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendants Owens and Frazier and, as a result, he fails to state a claim upon which relief can be granted against them.[11]

### 7.    No § 1983 Claim for Retaliation

To the extent that Plaintiff asserts that various Defendants have retaliated against him, those claims fail. Under the First Amendment, prison officials may not retaliate against inmates for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of

---

[11]Plaintiff's repeated allegation that Defendant Frazier was part of a "campaign of harassment" designed to deny Plaintiff his constitutional rights is entirely conclusory and is thus insufficient to demonstrate the sort of "widespread abuse," Brown, 906 F.2d at 671, or improper custom or policy, Hartley, 193 F.3d at 1269, that would allow Warden Frazier to be held responsible for the actions of his employees.

Moreover, Plaintiff does not satisfy his burden of putting Defendant Frazier on notice of a widespread problem or otherwise show that Defendant Frazier was directly involved with Plaintiff's alleged claims simply by alleging that he filed statements and grievances. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254. Of note, the speech or act must be constitutionally protected, and there must be a causal connection between the protected speech and the retaliatory action. Id. at 1250; O'Bryant v. Finch, 637 F.3d 1207, 1216-20 (11th Cir. 2011).

Here, Plaintiff makes repeated use of the word "retaliatory" in describing the underlying motivation behind the various claims that he alleges. For instance, he describes the alleged mixing of the non-vegan and vegan trays as a "malicious retaliatory tactic," the allegedly defective grievance system as "a retaliatory means to injustly hinder appropriate procedures," and the alleged lack of ventilation in his prison cell as evidence of "retaliatory tactics of cruel and unusual punishment." (Doc. no. 20, pp. 16, 17, 29.) As such, Plaintiff appears to include "retaliation" as simply one legal term among many in his formulaic recitation of alleged wrongs committed against him rather than as an actual claim; at no point in his amended complaint does he allege that Defendants retaliated against him as a result of any constitutionally protected speech or act, or that he was thereby deterred from

19

exercising his First Amendment rights in any way. Plaintiff has therefore failed to state a retaliation claim for which relief can be granted.

### 8. No Claim for Conspiracy

To the extent Plaintiff suggests that there was some sort of conspiracy afoot amongst Defendants as a group, or the prison system at large, such allegations fail to state a claim upon which relief can be granted. As noted above, an attempted conspiracy claim supported only by conclusory, vague, and general allegations is subject to dismissal. Kearson, 763 F.2d at 407; see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . It is not enough to simply aver in the complaint that a conspiracy existed."). To prevail on a conspiracy claim under § 1983, a plaintiff must (1) show that the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ." Id. Here, Plaintiff does not offer any specifics on when or how an agreement between any persons, let alone an agreement involving any Defendants, may have been reached to violate Plaintiff's rights. Rather, Plaintiff simply makes repeated use of the word "conspiratorially" in connection to his allegations, similar to his equally ineffective and essentially meaningless use of the word "retaliatory," as described above. Accordingly, Plaintiff has failed to state a viable

20

conspiracy claim.

## II.    MOTION FOR ENTRY OF DEFAULT

The Court will also take this opportunity to address Plaintiff's "Declaration for Entry of Default," in which Plaintiff requests that default be entered against the named Defendants due to their alleged failure to respond to Plaintiff's complaint. (Doc. no. 13, p. 1.)

### A.    Background

In this case, Plaintiff simultaneously filed his complaint, a motion requesting permission to proceed IFP, and a motion requesting the appointment of counsel on July 20, 2012. (Doc. nos. 1-3.) On July 31, 2012, the Court denied Plaintiff's motion for the appointment of counsel and granted his motion to proceed IFP, directing that he complete and submit the appropriate papers within 30 days. (Doc. no. 4.) Plaintiff timely returned his IFP papers, and the Court accordingly directed that he make an initial payment of $4.35 within 30 days. (Doc. no. 8.) Plaintiff failed to do so, and on September 25, 2012, the Court granted him an additional 14 days to pay his initial fee. (Doc. no. 12.) Three days later, on September 28, 2012, Plaintiff filed the instant motion requesting entry of default. (Doc. no. 13.) On October 3, 2012, Plaintiff filed a response to the Court's September 25th Order, explaining that he was unable to pay the initial fee but that it was his intention to pursue the case. (Doc. no. 14.) Notably, because Plaintiff had not yet paid the initial fee or notified the Court of his intentions at the time that he made his request for entry of default, the Court had not yet screened Plaintiff's complaint pursuant to the IFP statute to determine which, if any,

21

claims are viable and which, if any, Defendants should be served with a copy of the complaint. See 28 U.S.C. § 1915A. On November 8, 2012, the Court screened Plaintiff's complaint and recommended that it be dismissed for failure to state a claim. (Doc. no. 16.) Thereafter, Plaintiff filed objections (doc. no. 16), and the Court directed him to file an amended complaint, which the Court has screened in this Report and Recommendation.

**B.    Discussion**

Plaintiff asserts that he is entitled to entry of default because "more than 20 days have elapsed since the date on which defendants herein were served with summons and a copy of Plaintiff's complaint." (Doc. no. 13, p. 1.) Plaintiff, however, is simply mistaken. As noted above, Plaintiff notified the Court on October 3, 2012 that he was unable to pay his initial fee, and thus the Court is only now – after screening his original complaint, receiving his objections, and directing him to amend – proceeding to screen Plaintiff's amended complaint to determine whether or not service should, in fact, be made on any of the named Defendants.[12]

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Thus, a default is available under Fed. R.

---

[12] Although Plaintiff states that Defendants were served on August 3, 2012, no activity in this case is docketed as having taken place on that date. Moreover, the Court notes that Plaintiff's other references to dates in the case in the instant motion are also incorrect; for instance, the case was filed on July 20, 2012, not on July 30, 2012.

Civ. P. 55 only when a party has failed to plead or otherwise defend as provided by the Federal Rules. Here, since the Court has only just now screened Plaintiff's amended complaint, no Defendants have been served, let alone failed to plead or otherwise defend. Accordingly, Plaintiff's request for entry of default should be denied.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the following of Plaintiff's claims be **DISMISSED**: his conditions of confinement claims based on prison officials allegedly not wearing gloves when handling food, the allegedly insufficient availability of cleaning materials, and allegedly inadequate cell ventilation; his claim concerning the grievance system; his claim concerning his freedom to exercise his religion; his claim concerning the alleged confiscation of his hygienic products; his claims of retaliation; and his conspiracy claim. The Court further **RECOMMENDS** that the following Defendants be dismissed: Defendants Owens, Dees, Sanders, Toby, Spires, White, Couley, and Davis. Finally, the Court **RECOMMENDS** that Plaintiff's motion for entry of default be **DENIED**. (Doc. no. 13.)

SO REPORTED and RECOMMENDED this 21st day of February, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

23